## NELS GIBSON v. FRED NELSON (OR GIBSON).[1]

June 3, 1910.

Nos. 16,425—(18).

**General retainer of attorney — compromise of case.**

An attorney, under his general retainer, has no implied power to settle and compromise his client's cause of action, except when confronted with an emergency, and prompt action is necessary to protect the interests of the client, and there is no opportunity for consultation with him.

**Same — stipulation for dismissal — impeachment of settlement.**

An attorney, without authority, compromised his client's cause of action after action was brought thereon, and stipulated for a dismissal upon the merits. Thereafter the client, through another attorney, brought a new action upon the same cause, and defendant pleaded in bar the compromise and settlement, to which plaintiff replied that the settlement was unauthorized, and fraudulently entered into by the attorney. *Held*, that the validity of the compromise and settlement, the stipulation evidencing the same not having been followed by judgment, was a proper issue in the case, and that the rule against collateral attack does not apply.

**Dismissal by plaintiff.**

Plaintiff in an action may, without the consent of his attorney, dismiss his action by proceeding in the manner pointed out by section 4195, R. L. 1905.

**Persons dealing with attorney — notice of attorney's authority.**

Plaintiff dismissed the action referred to in the second paragraph hereof, but the settlement of the action as therein mentioned was made before the dismissal was completed. *Held*, that the rules of law applicable to principal and agent control the relation between attorney and client, and persons

1Reported in 126 N. W. 731.

dealing with the attorney are bound to take notice of the extent of his authority, and of his lack of authority to compromise the action.

Action in the district court for Cottonwood county to recover $5,000 for an assault and battery. The answer alleged that before the commencement of this action another action had been brought for the same cause; that the former action had been settled and dismissed upon the merits by a stipulation of the parties before the present action was begun. The reply admitted the former action and the stipulation dismissing the same and alleged that before the stipulation was made the same was dismissed by plaintiff in person, and also alleged that such stipulation was fraudulently made by defendant and plaintiff's attorney in the former action, and that plaintiff had discharged his attorney before the signing of the stipulation. It further alleged that such attorney had no authority to settle or dismiss the action. The case was tried before P. E. Brown, J., who at the close of the testimony denied defendant's motion for a directed verdict. The cause was submitted to the jury which returned a verdict in favor of plaintiff for $1,875. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*Knox & Faber,* for appellant.

*Wilson Borst* and *J. G. Redding,* for respondent.

BROWN, J.

This action was brought to recover damages for an assault and battery alleged to have been wilfully and wrongfully committed upon plaintiff by defendant. A verdict was returned for plaintiff for the sum of $1,875, and defendant appealed from an order denying his motion for a new trial.

The merits of plaintiff's cause of action are not involved on this appeal, as all questions presented have reference to rulings of the trial court respecting one of the principal defenses interposed. In addition to a general denial of all the allegations of the complaint, defendant specially pleaded the commencement of a former action for the same cause, and that on November 26, 1908, the cause of action was compromised and settled, and a stipulation entered into

between the parties dismissing the action upon its merits. Plaintiff by reply alleged that the settlement was made and entered into by plaintiff's attorney without authority, and was fraudulent and collusive.

The facts with reference to this defense are as follows: There is no dispute about the commencement of the former action. It was brought by an attorney retained for the purpose, other than the plaintiff's present attorney. For some reason, not necessary to inquire into, plaintiff became dissatisfied with that attorney and his conduct of the litigation, and had determined to dispense with his further services. While there appears to have been no formal discharge of the attorney, he knew of the dissatisfaction of his client before the settlement of the action relied upon by defendant in bar of this action. Plaintiff had proceeded to Windom, in Cottonwood county, in November, 1908, for the purpose of attending, as he supposed, the trial of his action at the term of court then in session. Upon his arrival, his attorney informed him that his action would not come on for trial that term. Plaintiff expressed his dissatisfaction, and in an informal way stated to the attorney that he did not desire his services longer. He then employed his present counsel to conduct his case. On November 24, 1908, his new counsel prepared, and plaintiff properly signed, a dismissal of the former action, and filed the same with the clerk of court on November 26. Formal written notice of the dismissal was not served upon the defendant until November 28, when a copy thereof was delivered to him by the sheriff. Having filed the dismissal with the clerk, the new attorney brought the present action. There is evidence in the record to the effect that defendant's attorney was informed on November 24 of the purpose of plaintiff to dismiss the former action, and plaintiff's former attorney so understood the situation.

After the filing of the dismissal just mentioned with the clerk, but before the service of the same upon defendant, plaintiff's former attorney and defendant's attorney had a conference, and, without consulting plaintiff, settled and compromised the action; defendant paying plaintiff's attorney the sum of $200 in full settlement of the cause of action. This settlement was evidenced by a written stipu-

lation in the following language: "This cause having been settled by and between the parties hereto, it is stipulated and agreed that the same be and it is hereby dismissed on the merits, without costs or disbursements to either party"—and was signed by the attorneys. As already stated, plaintiff's former attorney knew that his client was not satisfied with his conduct of the case; but, on the theory that he had some rights of his own in the premises for the protection of his fees and compensation, he undertook to settle the action, and accepted and still retains the proceeds. Though his client was in town and near at hand, he did not consult or inform him of his purpose to settle the action, and he had no express authority to make the same. The court submitted to the jury the question whether the settlement was fraudulent, and their verdict for plaintiff answered the question in the affirmative.

Of the several questions presented by the record and discussed by counsel two only require consideration at our hands: (1) Whether an attorney has implied authority to compromise his client's cause of action; and (2) whether a compromise in the form of a stipulation, providing, in addition to the settlement, for a dismissal of the action upon its merits, though invalid, may be set aside in a subsequent action upon the same cause, or whether it should be attacked directly in the action in which it was made; in other words, whether the rule against collateral attack applies to such a settlement and stipulation.

1. There is no claim in the case at bar that plaintiff's former attorney had express authority to settle the action, and unless by his general retainer the law clothed him with that authority by implication he did not possess it, and the settlement made by him was not binding upon his client, and not a bar to the present action. Section 2283, R. L. 1905, provides that an attorney may bind his client at any stage of the action or proceeding by an agreement made in open court, or in the presence of the clerk and entered in the minutes of the court, or by a writing signed by him. This has been construed to include all power and authority incident to the prosecution of an action or defense and the control of all proceedings therein. In Bray v. Doheny, 39 Minn. 355, 40 N. W. 262, a stipulation by

the attorney, without the consent of his client, dismissing the demand for a second trial of an ejectment case, was sustained. It has been construed as authorizing the waiver of specific defenses (Bingham v. Board of Suprs. of Winona County, 6 Minn. 82 [136]), as authorizing the dismissal of an action (Wells v. Penfield, 70 Minn. 76, 72 N. W. 816; Rogers v. Greenwood, 14 Minn. 256 [333]), and to sustain a stipulation that the action shall abide the event of another action involving the same issues (Eidam v. Finnegan, 48 Minn. 53, 50 N. W. 933, 16 L. R. A. 507). It has been construed to apply, also, to various other acts or stipulations of an attorney without the consent of his client, subject in all cases to the power of the court to set the same aside, if fraudulent or improvidently made.

But no case in this court sustains the contention that an attorney has implied authority to compromise his client's cause of action. The converse of the proposition would seem to be supported by Davis v. Severance, 49 Minn. 528, 52 N. W. 140, and Burgraf v. Byrnes, 94 Minn. 418, 103 N. W. 215. The case of Bates v. Bates, 66 Minn. 131, 68 N. W. 845, sustains the authority in case of an emergency, and where it appears that there was no opportunity for consultation with the client, and the protection of his interests demanded immediate action. And though the language of Chief Justice Gilfillan in the case of Bray v. Doheny, supra, is broad and comprehensive, and construes the statute to vest an attorney with general authority in the action in which he is engaged, manifestly this must be limited, in the light of the rules and principles of the law of principal and agent, which apply to the relation of attorney and client, to such steps and proceedings in the action as are usual, necessary, or proper in the conduct or prosecution of the same; for the authorities are uniform that the acts of an attorney, outside and beyond the ordinary course of procedure in the action, are not binding upon his client.

The general trend of authority in other states, where the question has been presented and passed upon, sustains the proposition that an attorney has not by implication the right to compromise his client's cause of action, and, though the courts are not in full

harmony upon the subject, the great preponderance of the adjudi-
cated cases agree in so declaring the law. 7 Current Law, 342;
Weeks' Attorneys, 471; 4 Cyc. 945, and cases cited; Holker v.
Parker, 7 Cranch, 436, 452, 3 L. Ed. 396; Lewis v. Gamage, 1
Pick. (Mass.) 347; Lewis v. Duane, 141 N. Y. 302, 36 N. E.
322; Barrett v. Third Avenue, 45 N. Y. 628, 635; Mandeville v.
Reynolds, 68 N. Y. 528, 540; Dickerson v. Hodges, 43 N. J. Eq.
45, 10 Atl. 111; Crotty v. Eagle, 35 W. Va. 143, 13 S. E. 59;
Union v. Buchanan, 100 Ind. 63; Repp v. Wiles, 3 Ind. App. 167,
29 N. E. 442; McClintock v. Helberg, 168 Ill. 384, 48 N. E. 147;
Trope v. Kerns, 83 Cal. 553, 555, 23 Pac. 691; Eaton v. Knowles,
61 Mich. 625, 28 N. W. 740; Kelly v. Wright, 65 Wis. 236, 26
N. W. 610; Martin v. Capital, 85 Iowa, 643, 52 N. W. 534.

The rules and principles of the law of principal and agent con-
trol the relation of attorney and client (4 Cyc. 932), and though
the authority of the attorney may in many respects exceed that of
an ordinary agent, yet his employment to conduct litigation ought
not, as a matter of legal inference, wholly to divest the client of the
control of his case. The attorney's authority, on principle as well
as on authority, must be limited to the management of the litigation
and the control of all proceedings therein; but this does not neces-
sarily include the right to compromise the suit, and there is no reason
why it should. It is not a usual, necessary, or ordinary step in'
the action, but rather one of an opposite nature, a surrendering of
the right to further proceed with the action; and before this step
is taken the client should not only be consulted, but his express
authority received.

And, in harmony with the great majority of the courts of this
country, we affirm the rule that an attorney has no implied authority
to compromise his client's cause of action, except when confronted
with an emergency, illustrated by the case of Bates v. Bates, supra.
This is a well-defined exception to the rule stated, and extends to
an attorney authority to compromise his client's cause when prompt
action is necessary, and there is no opportunity for consultation
with him, and delay would jeopardize his rights. But the exception
requires the settlement to be made, not for the protection of asserted

rights of the attorney to compensation, but for the protection of the best interests of the client. Union v. Buchanan, supra, and Holker v. Parker, supra.

The exception, however, has no application to the case at bar. There is here no claim of an emergency, or that the client was inaccessible at the time of the settlement, or that his interests demanded immediate attention. On the contrary, he was within a stone's throw of his attorney's office when the settlement was made, and it was made, not in his interests, but to protect the rights of the attorney. There was clearly no occasion for hurried action.

While it is true that we have held in the cases already cited that an attorney may bind his client by a stipulation dismissing an action, or waiving a particular defense, it is clear that where he goes beyond a dismissal, and attempts, without consultation with his client, to compromise his action, he exceeds the authority possessed by him. Those cases are clearly distinguishable. The stipulation for a dismissal of an action, or the waiver of a particular defense, represents, prima facie, at least, the professional judgment or opinion of the attorney that the client has in fact no cause of action or defense, an opinion he has the right to form and act upon without consulting his client. The stipulation for a dismissal in such a case is a usual proceeding in the action, within the rule announced in Bray v. Doheny, supra; but a dismissal pursuant to a compromise is clearly not of that character.

2. This conclusion renders unnecessary the consideration of several assignments of error challenging rulings of the court upon the admission and exclusion of evidence and certain of its instructions to the jury. The only question submitted to the jury upon this branch of the case was whether the settlement and compromise was fraudulent, and the evidence complained of as having been erroneously admitted had reference solely to that issue, which, in view of the conclusion that the attorney had no authority to compromise the action, becomes wholly immaterial. The same suggestion disposes of the assignments challenging the instructions of the court.

3. We come, then, to the question whether the stipulation of

settlement and dismissal may be set aside in this action, or whether proceedings in the former action should have been taken for that purpose. Counsel for defendant presented this feature of the case with much earnestness, and we have given the question serious and careful consideration, with the result that we are unable to concur in his view of the rules of law pertinent to the subject. The doctrine against collateral attack applies almost exclusively to judgments of duly constituted courts, or the proceedings and decisions of judicial or quasi judicial officers in matters within their jurisdiction. It has no application to contracts, or to stipulations or agreements in actions or proceedings not followed by judicial confirmation. All private writings, contracts, and agreements are open to attack for fraud, or for want of authority in an agent to enter into the same, whenever or wherever rights are asserted thereunder. It is unnecessary to assail them by direct proceeding.

The stipulation in question was a compromise of the action, a contract not followed by judgment, and comes within the rule stated. It cannot be differentiated from an ordinary settlement and release before action is brought. In cases of that kind we have, in line with the authorities generally, uniformly held that the injured party may ignore the release, bring his action on the released cause, and, upon the coming in of an answer setting up the settlement and release, reply that it was obtained by fraud, or was otherwise unauthorized and not of binding force. Christianson v. Chicago, St. P., M. & O. Ry. Co., 61 Minn. 249, 63 N. W. 639; Christianson v. Chicago, St. P., M. & O. Ry. Co., 67 Minn. 94, 69 N. W. 640; Peterson v. Chicago, M. & St. P. Ry. Co., 36 Minn. 399, 31 N. W. 515.

The stipulation, being founded upon a compromise of the action and a contract of release and discharge of defendant's liability, was, within the rule, subject to attack in this action precisely as though no provision for a dismissal of the action had been included therein. If judgment had been formally entered, it is probable that direct proceeding to set it aside would have been necessary; but no such judgment was entered until the action was out of court on plaintiff's personal dismissal. We therefore hold that it was not necessary to attack the stipulation by motion or otherwise in the former action.

The authorities cited by defendant in support of the contention that the stipulation is of the same force and effect as a judgment do not sustain the position, and our research has brought to light no case in which the rule contended for has been applied to a stipulation upon which no judgment was entered.

It is urged by defendant in this connection that plaintiff's dismissal of the action was ineffectual, because not authorized by his attorney, and the further reason that notice thereof was served upon defendant, instead of his attorney. These contentions are not sound. An attorney has no exclusive control over litigation committed to his charge. Absolute control thereof rests with his client. Of course, an attorney may do many things in the course of the action without consulting, and which bind, his client; but the latter's directions and orders, when given, are supreme. Any other rule would elevate the agent above the principal, and in fact reverse the relation between them; the agent becoming the principal, and the principal the agent. So that it is clear that plaintiff was not required to obtain the consent of his attorney before dismissing the action. This view is sustained by the decision in Anderson v. Itasca Lumber Co., 86 Minn. 480, 91 N. W. 12, 291, where it was expressly held that a plaintiff might, without consultation with his attorney, dismiss his action. The dismissal there upheld was substantially like that in the case at bar.

The further point that the notice of dismissal should have been served upon defendant's attorney, and, not having been so served, was a nullity, is not well taken. Though our statutes provide that all notices shall be served upon the attorney, and not upon the party, that provision has reference more particularly to notices of motion and other proceedings served during the pendency of the action, and does not exclude the right of the plaintiff personally to serve a notice of the dismissal of the action upon the defendant, instead of defendant's attorney. At any rate, such service was not a nullity. The notice was served upon defendant in November, 1908, and long before the entry of judgment under the stipulation between the attorneys the clerk had noted the dismissal upon his records in the

manner required by statute, and the judgment caused to be entered by defendant was unauthorized, and a nullity upon the face of the record. There was no action pending at that time. The court, therefore, did not err in excluding the judgment when offered in evidence. 1 Black, Judgments, 278.

Though the former action was not dismissed in fact until after the commencement of the present action, its subsequent dismissal and proof thereof were proper. Page v. Mitchell, 37 Minn. 368, 34 N. W. 896. The real issue in this case did not so much involve the dismissal of the action as it did the alleged fact that it had been compromised and settled, and that was the principal issue litigated on the trial. That the action was in fact dismissed there can be no question. While plaintiff's dismissal did not take effect until after the alleged settlement, defendant was chargeable with notice of the want of authority in plaintiff's counsel to enter into the same, and cannot now be heard to say that he settled and compromised the action with the attorney in good faith and before notice that plaintiff had dismissed the same. 4 Current Law, 315.

This covers all questions requiring special mention. For the reasons stated, the validity of the settlement and compromise was a proper issue in the case, and, though the court submitted the same to the jury upon the question of fraud and collusion, a verdict that it was unauthorized as a matter of law could properly have been directed, and it is not important whether there were or were not errors in the admission of evidence or in the submission of the question to the jury on the issue of fraud.

The rights of the former attorney are not involved in the case, and the suggestion that he should have an opportunity to be heard before setting aside the stipulation is without force. If the application to set aside had been made in the former action, he would not have been a necessary party. Whatever rights the attorney may have in the premises may be presented by him in proceedings for their protection. Nor is the question before us whether the former attorney was rightly discharged by plaintiff. That plaintiff had the right to dismiss him there can be no question. Of course, this could not be done to defraud the attorney. But, as already stated, his

rights are in no way involved in the action. He asserts none, by intervention or otherwise, and defendant cannot urge them for him. Order affirmed.